FILED

2012 Dec-20  AM 10:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **SHELTON HILL,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **5:12-cv-00812-AKK** |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| **COMMISSIONER,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Shelton Hill, Jr. ("Hill") brings this action pursuant to Section

205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review

of the final adverse decision of the Commissioner of the Social Security

Administration ("SSA").  This court finds that the Administrative Law Judge's

("ALJ") decision - which has become the decision of the Commissioner - is

supported by substantial evidence and, therefore, **AFFIRMS** the decision denying

benefits to Hill.

### I. Procedural History

Hill filed an application for Disability Insurance Benefits on December 18,

2009, alleging a disability onset date of November 28, 2009, which was later

amended to January 9, 2009, due to congestive heart failure, Crohn's disease, and

high blood pressure.  (R. 10, 25, 98).  After the SSA denied Hill's applications, he

requested a hearing before an ALJ.  (R. 49, 52).  The ALJ subsequently denied

Hill's claims, (R. 7-21), which became the final decision of the Commissioner

when the Appeals Council refused to grant review, (R. 1-6).  Hill then filed this

action for judicial review pursuant to § 205(g) and § 1631(c)(3) of the Act, 42

U.S.C. § 405(g) and § 1383(c)(3).  Doc. 1; *see also* doc. 9.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial

evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v.

Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the

correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g)

and 1383(c) mandate that the Commissioner's "factual findings are conclusive if

supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the

evidence, or substitute its judgment for that of the Commissioner; instead, it must

review the final decision as a whole and determine if the decision is "reasonable

and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*,

703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a

preponderance of evidence; "[i]t is such relevant evidence as a reasonable person

would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529

(quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by

substantial evidence, the court must affirm the Commissioner's factual findings

even if the preponderance of the evidence is against the Commissioner's findings.

*See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review

of the ALJ's findings is limited in scope, it notes that the review "does not yield

automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairments which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or

psychological abnormalities which are demonstrated by medically acceptable

clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.

20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in

sequence:

> (1)   whether the claimant is currently unemployed;
>
> (2)   whether the claimant has a severe impairment;
>
> (3)   whether the impairment meets or equals one listed by the Secretary;
>
> (4)   whether the claimant is unable to perform his or her past work; and
>
> (5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative

answer to any of the above questions leads either to the next question, or, on steps

three and five, to a finding of disability.  A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20

C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to

prior work the burden shifts to the Secretary to show other work the claimant can

do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must

meet additional criteria.  In this circuit, "a three part 'pain standard' [is applied]

when a claimant seeks to establish disability through his or her own testimony of

pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th

Cir. 1991).  Specifically,

> The pain standard requires (1) evidence of an underlying medical
> condition and either (2) objective medical evidence that confirms the
> severity of the alleged pain arising from that condition or (3) that the
> objectively determined medical condition is of such a severity that it
> can be reasonably expected to give rise to the alleged pain.[1]

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective
> medical evidence of a condition that could reasonably be expected to
> cause the pain alleged, neither requires objective proof of the pain
> itself.  Thus under both the regulations and the first (objectively
> identifiable condition) and third (reasonably expected to cause pain
> alleged) parts of the *Hand* standard a claimant who can show that his
> condition could reasonably be expected to give rise to the pain he
> alleges has established a claim of disability and is not required to
> produce additional, objective proof of the pain itself.  *See* 20 CFR §§
> 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th
> Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical

information omitted) (emphasis added).  Moreover, "[a] claimant's subjective

testimony supported by medical evidence that satisfies the pain standard is itself

sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223.  Therefore, if

a claimant testifies to disabling pain and satisfies the three part pain standard, the

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761
F.2d 1545, 1548 (11th Cir. 1985).

ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

## IV.  The ALJ's Decision

In properly applying the five step analysis, the ALJ first determined that Hill has not engaged in substantial gainful activity since January 9, 2009, and therefore met Step One. (R. 12). The ALJ also acknowledged that Hill's cardiovascular system disorders were severe impairments that met Step Two. *Id*. The ALJ proceeded to the next step and found that Hill failed to meet or equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 and thus did not satisfy Step Three. *Id*. at 14. Although he answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to

Step Four where he determined that Hill

> has the residual functional capacity to perform a wide range of light work as defined in 20 CFR 404.1567(b). I find claimant can frequently lift or carry 10 pounds, occasionally lift or carry 20 pounds, sit for 6 hours of an 8 hour workday, and stand or walk for 6 hours of an 8 hour workday. I also find claimant can never climb ladders, ropes and scaffolds, and occasionally stoop, kneel, crouch, crawl, balance, and climb ramps and stairs. I further find claimant must avoid concentrated exposure to hazards, extreme heat, and extreme cold.

*Id*. at 15. With respect to the pain standard, the ALJ found that Hill's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Hill's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." *Id*. Accordingly, the ALJ found that Hill is capable of performing past relevant work. *Id*. at 16. Because he answered Step Four in the negative, the ALJ declined to address Step Five and found that Hill is not disabled. *Id*. at 18; *see also McDaniel*, 800 F.2d at 1030.

## V.  Analysis

Hill contends that "the ALJ failed to properly evaluate the credibility of [Hill]'s complaints of pain consistent with the Eleventh Circuit Pain Standard." Doc. 9 at 4. This standard requires "evidence of an underlying medical condition" that is either (a) supported by "objective medical evidence that confirms the

severity of the alleged pain arising from that condition," or (b) "of such a severity

that it can be reasonably expected to give rise to the alleged pain." *Holt*, 921 F.2d

1221 at 1223.  Moreover, a claimant's subjective testimony regarding pain, if

supported by the medical evidence, is sufficient to support a finding a disability.

*Id.* Accordingly, an ALJ must articulate the reasons for discrediting a claimant's

pain testimony and substantial evidence must support the reasons. *Hale*, 831 F.2d

at 1012.  In this instance, the ALJ articulated two primary reasons for discrediting

Hill's subjective testimony regarding pain: (1) that it was inconsistent with the

objective medical evidence, and (2) that it was inconsistent with Hill's reported

daily activities.  (R. 15-16).  Hill disagrees and asserts that the ALJ's reasons are

not supported by the evidence.  Doc. 9 at 5.  As set forth more fully below, the

court finds that the ALJ's decision is supported by substantial evidence.

A.    **Hill's Testimony Regarding Pain & Other Symptoms**

Hill testified that his symptoms include "fatigue, shortness of breath, [and]

chest pain" and that his symptoms "haven't resolved" but "have gotten a little

better with the medications."  (R. 27).  According to Hill, he experiences fatigue

and shortness of breath "[i]f [he] get[s] up to do something in the house, like,

cooking or something" after about 10 or 15 minutes. *Id.* at 28.  To alleviate these

symptoms, Hill stated he has to "rest for a bit" and then he is able to get back up

and "do some things, but not [] heavy lifting or anything." *Id*. at 29.  Hill

estimates that in an 8 hour workday, he would need to spend 5-6 hours laying

down.  *Id*.  With respect to his ability to lift things, Hill testified that physical

exertion "caus[es] [his] chest to hurt" so he is able to lift "[n]o more than. . . 10, 12

pounds."  *Id*. at 30.  Hill stated also that he can walk about 25 yards before getting

out of breath.  *Id*.  Although he testified that his "breathing [is] normal if [he is]

standing in one place[,]" Hill stated also that he could not take a job that required

him to stand because "after [he] stand[s] for a while, it starts hurting."  *Id*. at 31.

Upon reexamination by the ALJ, Hill clarified that his chest pain was "like a

clamping pressure right in the center of [his] chest[.]"  *Id*.

## B.     The Objective Medical Evidence

The extensive medical record failed to support Hill's disability claim.  For

example, Dr. Basil Hirschowitz and Dr. Wilhelm Tietke treated Hill for Crohn's

disease for several years.  *See* (R.174, 190).  In early 2008, prior to Hill's alleged

onset date, Dr. Tietke noted that "[i]n the past [Hill's] Crohn's disease was very

severe and required surgery, but over the past several years he has had almost no

symptoms[.]" *Id*. at 190.  The medical record includes no evidence suggesting that

Hill's Crohn's disease was not well managed through his prescriptions.  To the

extent that Hill is contending that his Crohn's disease supports his disability claim,

he failed to establish this contention.

The medical evidence shows also that on January 9, 2009, Hill was admitted to Crestwood Medical Center ("Crestwood") after coming in for chest pain and acute dyspnea (shortness of breath). *Id*. at 194, 202. "After optimization of medical management, [Hill] underwent a cardiac catheterization on January 12, 2009." *Id*. Dr. Sadasiva Katta then diagnosed Hill with congestive heart failure with ischemic cardiomyopathy but noted that "[h]e has been clinically doing well and his congestive heart failure is well compensated, and he will be discharged home with followup in two weeks." *Id*. Consulting physician Dr. Charles G. Newton noted "I believe the patient has single-vessel coronary artery disease with severe global left ventricular dysfunction. I am not convinced this is an ischemic cardiomyopathy, and I am also not convinced that the patient is facing a significant risk for a coronary event. . . . I believe that he would benefit from continued anticongestive therapy and time, off alcohol, to assess potential improvement in his left ventricular function which would make coronary artery bypass graft a more attractive option." *Id*. at 205. Ultimately, Dr. Katta recommended medical management and a cardiac surgery consult for evaluation for possible bypass grafting. *Id*. at 208. Following this hospital stay, Hill followed up regularly with Dr. Katta and consistently reported no subsequent

significant anginal episodes, leading Dr. Katta to repeatedly note that Hill was doing well. *Id*. at 239, 240, 241.

The record contains no medical history for the period between September 2009 and July 2010, but by October 2010 Dr. Katta again noted that Hill was "clinically doing well with no recent symptoms of chest pain[.]" *Id*. at 254. Additionally, in April 2011, Dr. Katta noted that Hill was "clinically doing well on present medical management without any shortness of breath, chest pain, or orthopnea" and had a "normal clinical examination without any congestive heart failure." *Id*. at 253.

On May 17, 2011, Hill presented at Crestwood for chest pain but the radiology report from Dr. John Kaliszak listed the impression as "no acute abnormality." *Id*. at 262. On May 19, 2011, Hill returned to Dr. Katta because of a patent stent in the mid right coronary artery with no evidence of restenosis and totally occluded left anterior descending artery with right-to-left collaterals. *Id*. at 251. Dr. Katta noted "no significant disease" and recommended medical management. *Id*. A week later, Hill was admitted to Crestwood for two days for cardiac catheterization showing patent stent in the RCA. *Id*. at 265. Dr. Katta noted that Hill "did well without any vascular complications" and that "[h]e will be discharged home and will have a followup in 2 weeks." *Id*. At Hill's follow up

the next month, Dr. Katta noted that the "EKG done revealed normal sinus rhythm with inferolateral T-wave inversion," started Hill on a new medicine, and set a four month follow up appointment. *Id*. at 252.  Hill provided no further follow up information and the record does not indicate that Hill suffered any complication or further coronary event.  Critically, nothing in these medical records supports Hill's contention that he is disabled.

## C.      Hill's Reported Daily Activities

On Hill's function report, he indicated that he makes coffee, goes to the bathroom "about 3 or 4 times," watches television, makes small meals like cereal and sandwiches, cleans up the kitchen, mows the yard with a riding lawnmower, loads and unloads the washing machine, and folds and puts away the clothes.  (R. 130, 137).   Hill added later that he dusts for about 30 minutes and vacuums the carpet for about 20 minutes, that his symptoms do not affect his ability to care for himself, that he drives and rides in a car, and that he is able to grocery shop for about 45 minutes with his wife. *Id*. at 131-133.  Hill also stated that he can walk for 15 to 30 minutes before he needs a break for about one minute. *Id*. at 135. Moreover, Hill indicated on his cardiovascular questionnaire that he exercises by walking half a mile twice a week for about 10-15 minutes. *Id*. at 138.  Notably, Hill marked that he does not have shortness of breath or chest or other discomfort

when exercising.  *Id*. at 138-39.

**D.     The ALJ's Opinion**

Based on the medical evidence, the court finds that the ALJ's decision that

Hill's testimony regarding his symptoms was not fully credible is supported by

substantial evidence.  The objective medical evidence provided almost entirely

from Hill's treating physician shows that although Hill suffered from two serious

congestive heart failure complications, the condition was well treated by

medication.  Following Hill's final hospital stay, the record fails to indicate any

further complications or coronary events.  As for Hill's Crohn's disease, the only

notes regarding this condition indicate also that it was successfully treated and

caused no further problems.  In other words, the objective evidence does not

support Hill's contention that his conditions are disabling.  In fact, the medical

evidence does not indicate that Hill is unable to work.  Additionally, Hill's daily

activities and cardiovascular questionnaire directly contradict his testimony before

the ALJ.  For example, Hill testified that he suffers from shortness of breath and

fatigue after doing basic daily activities for 10-15 minutes, would need to spend 5-

6 hours laying down in an 8 hour workday, can only walk 25 yards, and suffers

from chest pain after merely standing for a short period of time.  However, Hill

indicated on his report and questionnaire that he can drive and ride in a car, stand

and walk in a grocery store for 30-45 minutes, walk a half mile for exercise, mow the lawn and vacuum, and, most notably, that he suffers from no shortness of breath or chest discomfort when he exercises.  Accordingly, Hill's testimony is inconsistent with the medical record and the reports Hill filled out.  Based on this record, Hill has failed to establish that the ALJ improperly applied the pain standard.

### VI.  CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Hill is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.

**DONE** the 20th day of December, 2012.


_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE